JOHN R. HOUGHTON AND FRANK MONACO, PLAINTIFFS-RESPONDENTS, v. THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY, DEFENDANT-APPELLANT.

Decided September 21, 1928.

Before Justices KALISCH, KATZENBACH and LLOYD.

For the appellant, *Frederick B. Scott*.

For the respondents, *John B. Breslin, Jr.*

PER CURIAM.

The appellant railroad company maintained a freight house and yard and a place for public delivery of freight, from its freight cars, assigned to various individuals, at Kingsland, New Jersey. Between the tracks on which the freight cars were operated and placed for delivery of the freight to the public, there was a driveway a little more than thirty feet in width, which was provided for teams to approach the freight cars on the tracks.

The respondents owned a conveyor which they used to unload freight cars containing coal, sand, stones, gravel and ashes. The method of operating the conveyor to unload the cars was to push it under a freight car and thus place it under a pocket of a car, which pocket was then opened and the machine then operated. By this process the car was emptied in short time.

The appellant company permitted the conveyor to be brought to its premises and used there by the respondents to unload the cars. The latter had pursued the described method of unloading for more than two years with the consent of the appellant company. The appellant railroad company paid the respondents for unloading the cars, but it did not direct any particular way of unloading, that is, that it should be done by means of a conveyor or otherwise, it being conceded that the conveyor was a labor-saving device used by the respondents to save them from paying demurrage to the railroad company for holding the car under load.

There was proof in the case that the conveyor was damaged while in the driveway of the appellant's freight yard, on the 20th of June, 1926, between nine-thirty and ten o'clock of the forenoon of that day. There was uncontroverted proof that on the day before the conveyor was damaged it had been used by respondents, who had finished work and took it out of the tracks of the appellant company, and swung it clear into the roadway, that is, about three or four feet from the railroad tracks. On the following morning one of the respondents saw the conveyor in the driveway in the same position that it was on the night before the happening of the

accident, and that it was still clear of the tracks, about three and a half to four feet. Upon his return, within a half hour, he found the conveyor was turned over and smashed. It had been dragged for a distance of about twenty-five feet when it was turned over.

There was testimony that when the cars of the appellant company passed the place where the conveyor was standing, the conveyor was caught between two cars, dragged and turned over. At the time this happened the cars were being backed down the tracks.

It seems to us that from the testimony of the respondent, which was uncontroverted, that the conveyor stood a distance of three and a half to four feet from the tracks on the night before the accident, and also on the morning about a half hour before the conveyor was hit by the train, and there being no testimony tending to show that the conveyor had been moved from the position in which respondents left it before the accident, by someone in the appellant company's employ, or by the appellant's direction, the company's liability for the injury done to the conveyor was not established.

The circumstance that the appellant company permitted the conveyor to remain upon its premises and to be used by respondents for unloading freight cars was nothing more than a mere naked license, and devolved no duty upon appellant company to use any care concerning the conveyor, and under such circumstance it could be only held liable to respond in damages if it appeared that the conveyor was damaged as the result of a willful or wanton act on the part of the appellant company.

It is quite clear that the conveyor must have been moved by someone from the position in which it was left by the respondents, on the company's property, but since the inference is equally permissible that the act which changed the position of the conveyor might have been the act of a stranger as well as of that of one in the employ of the appellant company, the respondents failed to establish the appellant's liability.

For the reasons given the judgment is reversed, and a new trial ordered.